**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | |
|---|---|
| DAVID R. CAMM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-cv-00123-TWP-DML |
| ) | |
| SEAN CLEMONS, ) | |
| ROBERT STITES, ) | |
| RODNEY ENGLERT, ) | |
| GORDON D. INGLE, *as the personal* ) | |
| *representative of the Estate of Stanley O. Faith*, ) | |
| and ESTATE OF STANLEY O. FAITH, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter is before the Court on a Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) by Defendant Gordon Ingle, the personal representative of the Estate of Stanley O. Faith ("the Estate") (Filing No. 310). Plaintiff David R. Camm ("Camm") initiated this action in 2014 against numerous law enforcement officers, prosecutors, and other individuals and entities, asserting claims for violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 as well as state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, and *respondeat superior*. Following settlement discussions, stipulations of dismissal, motions for summary judgment, an appeal to the Seventh Circuit, and remand from the Seventh Circuit, only two claims remain for trial against Defendants Sean Clemons ("Clemons"), Stanley O. Faith ("Faith"), Rodney Englert ("Englert"), and Robert Stites ("Stites"), two claims remain. The claims are (1) Camm's Fourth Amendment claim based on the first probable cause affidavit and (2) a *Brady* claim based on the suppression of Stites's lack of qualifications and suppression of the facts

surrounding the handling of a DNA profile. During the course of this litigation Faith died, and after his death, the Estate filed a Motion for Judgment on the Pleadings, arguing that Faith's death abated the claims asserted against him. For the following reasons, the Court **grants** the Motion.

### I. BACKGROUND

For purposes of this Motion, the Court borrows from the Seventh Circuit's opinion in this matter to provide a brief background of the case.

> This case arises from a heinous triple murder that occurred almost [twenty-one] years ago in Georgetown, Indiana, a small town near the Kentucky border. The plaintiff is David Camm, a former state trooper who was twice convicted of the crimes but was acquitted after a third trial. He then filed this suit for damages for the years he spent in custody.

(Filing No. 239 at 4.)

> Camm came home on the night [of September 28, 2000,] and found his wife and two young children shot to death in the garage. Two days later law-enforcement officers obtained a warrant for his arrest, relying almost exclusively on the observations of Robert Stites—a plainly unqualified forensic assistant who was not trained to do anything more than photograph evidence. Taking a far more active role in the investigation, Stites told the investigators that several bloodstains on Camm's T-shirt were "high velocity impact spatter," indicating that Camm was present and in close proximity when one or more of the victims was struck by a bullet. Investigators and prosecutors exaggerated Stites's qualifications in a probable-cause affidavit and at trial, and a jury found Camm guilty. The judgment was reversed on unrelated grounds, and on retrial Camm was again convicted. That judgment too was reversed. A jury found him not guilty the third time around. He was released after 13 years in custody.
>
> This lawsuit under 42 U.S.C. § 1983 followed. The defendants are several investigators, two prosecutors, and Stites and his boss, who backed up his assistant's opinions. Camm alleges that the defendants willfully or recklessly made false statements in three probable-cause affidavits that led to his arrest and continued custody while he awaited trial and retrial. Though the parties and the district judge referred to this as a claim for malicious prosecution, we've since explained that "malicious prosecution" is the wrong label. It's a Fourth Amendment claim for wrongful arrest and detention. The suit also raises a claim of evidence suppression in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Finally, Camm alleges that the defendants deprived him of a fair trial by inducing the real killer Charles Boney to give a false account implicating him in the murders.

*Id.* at 5–6.

> Camm presented enough evidence to proceed to trial on the Fourth Amendment claim, but only as it relates to the first probable-cause affidavit. A trial is also warranted on the following aspects of the *Brady* claim: whether some of the defendants suppressed evidence of Stites's lack of qualifications and their failure to follow through on a promise to run a DNA profile through a law-enforcement database to check for a match.

*Id.* at 6.

Defendant Clemons was an Indiana State Police officer and the lead investigator of the murders. Defendant Faith was the elected Floyd County, Indiana prosecutor at the time of the murders and for Camm's first trial, and he took over and ran the murder investigation. Defendants Englert and Stites were employees of Englert Forensic Consultants, LLC, a forensic consulting firm, who assisted in the investigation by collecting evidence at the crime scene (Filing No. 1 at 32, 39, 44–45).

Following the Seventh Circuit Court of Appeals' Order and Mandate, this Court issued an Order, noting that the case had been

> remanded for trial on Camm's Fourth Amendment claim against Stites, Englert, Faith, and Clemons to the extent that the claim rests on the first probable-cause affidavit. Trial is also warranted on the *Brady* claim against the same four defendants for suppression of Stites's lack of qualifications and against Faith and Clemons for suppression of the facts surrounding their handling of the DNA profile on Boney's sweatshirt.

(Filing No. 240 at 2.)

While the case was on appeal at the Seventh Circuit, Defendant Faith died on March 18, 2019,[1] and, following the remand to this Court, Faith's counsel provided notice of his death to the Court on November 6, 2019 (Filing No. 248). Camm subsequently filed a motion to substitute party, requesting to have the Estate substituted for Faith as the defendant (Filing No. 261). The

---

[1] The pending Motion for Judgment on the Pleadings notes that Faith died on March 18, 2019 (*see* Filing No. 310 at 1; Filing No. 311 at 2), while the prior notice to the Court noted that he died on March 15, 2019 (*see* Filing No. 248).

3

Court granted the motion to substitute and allowed the Estate an opportunity to raise the issue of whether the claims against Faith abated with his death (Filing No. 281). The Estate then filed the pending Motion for Judgment on the Pleadings on the issue of abatement of Camm's claims against Faith and the Estate (Filing No. 310).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer, and the pleadings are closed. Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir. 1996). The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.* Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the Court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. Gen. Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the Court

is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (*quoting R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted). "A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

### III. DISCUSSION

In its Motion for Judgment on the Pleadings, the Estate raises the sole argument that the two claims remaining against the Estate abated when Faith died during the course of this litigation. The parties appear to agree on the overarching legal standards relevant to the issue of abatement, yet they disagree about the outcome from applying the legal standards to the remaining claims.

The two claims Camm has asserted against the Estate are brought pursuant to 42 U.S.C. § 1983. The issue is whether the claims abated upon Faith's death, and "[f]ederal law governs whether a federal claim survives. However, § 1983 is silent on the question of survivability." *Bennett v. Tucker*, 827 F.2d 63, 67 (7th Cir. 1987). Because Section 1983 is silent on the question of survivability, "42 U.S.C. § 1988 directs us to look to the most closely analogous state law to determine survivability." *Bentz v. City of Kendallville*, 577 F.3d 776, 778 (7th Cir. 2009) (internal citation and quotation marks omitted). Whether a Section 1983 claim survives the death of a party is determined by the law of the forum state so long as that state law is "not inconsistent with the Constitution and laws of the United States." *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978). Since Indiana law governs the survivability issue, the Section 1983 claims must be considered

within the relevant state law framework and most closely analogized to the appropriate Indiana tort claims. *Bentz*, 577 F.3d at 778–79. Courts "must first characterize [the] claim and then decide which Indiana tort is the most similar, without molding the constitutional claim to fit within the contours of state law." *Id.* at 779. Then courts "turn to the Indiana survival statute to determine whether that claim should survive." *Id.*

A. <u>**Section 1983 Claims and the Most Closely Analogous Indiana Tort Claims**</u>

The Estate argues that the two remaining claims—wrongful arrest and detention in violation of the Fourth Amendment and *Brady* violations for suppressing evidence—are most closely analogous to the Indiana torts of false imprisonment and malicious prosecution. "Under Indiana law, false imprisonment is defined as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003). "A defendant may be liable for false arrest when he or she arrests a plaintiff in the absence of probable cause to do so." *Id.*

The Estate asserts that the elements of a Section 1983 Fourth Amendment claim arising out of wrongful arrest and detention are consistent with the Indiana state law tort of false imprisonment because the determination of liability hinges on the same factual and legal analysis—the existence of probable cause. "[B]oth Indiana and federal law require the court to determine if there was probable cause for arrest, and both base the probable cause determination on whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense." *Id.*

The Estate argues,

> Since Plaintiff's Section 1983 Fourth Amendment wrongful arrest and detention claim has the absence of probable cause as a *prima facie* element and Indiana's common law tort of false imprisonment also has the same probable cause

6

>requirement, Plaintiff's Fourth Amendment claim against Faith is most analogous to the Indiana state law tort claim of false imprisonment.

([Filing No. 311 at 6](#).)

Concerning the *Brady* suppression of evidence claim, the Estate asserts,

>A Brady claim 'involving the alleged . . . suppression of exculpatory evidence is closely related, if not part of, [a] malicious prosecution claim." *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 559 (10th Cir. 1999) (citing *Heck v. Humphrey*, 512 U.S. at 479, 484). The Supreme Court of the United States has recently found that § 1983 due process claims for fabrication of evidence are most closely analogous to the common law tort of malicious prosecution. *McDonough v. Smith*, 139 S. Ct. 2149, 2156, 2160 204 L. Ed. 2d 506 (2019). Importantly, the claims are not required to be identical to draw a proper analogy. *Id.* (The Court found malicious prosecution was the most analogous common-law tort for due process fabrication of evidence claims, "even if the two are not identical.")

([Filing No. 311 at 7](#).)

The Estate notes that under Indiana law, the "essence of malicious prosecution rests on the notion that the plaintiff . . . has been improperly subjected to legal process," *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001), and the elements of a malicious prosecution claim are that the defendant instituted or caused to be instituted an action against the plaintiff, the defendant acted with malice in doing so, the defendant had no probable cause to institute the action, and the original action was terminated in the plaintiff's favor. *Id.* In comparison, "A *Brady* violation occurs when the prosecution fails to turn over exculpatory or impeaching evidence, thus violating a defendant's due process rights." *Alexander v. F.B.I.*, 2011 WL 4833091, at *2 (S.D. Ind. 2011). The elements of a *Brady* claim are "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued." *Id.*

The Estate argues that Camm's *Brady* claim is founded on his contention that Faith violated his due process rights by suppressing exculpatory and impeaching evidence. The Estate asserts the *Brady* claim is most similar to a state-law malicious prosecution claim because both claims require the commencement of criminal proceedings and challenge the integrity and legal process of the criminal prosecution, and neither claim is independent from the underlying criminal proceeding.

In response to the Estate's arguments, Camm asserts that his Fourth Amendment claim and *Brady* claim are most akin to a state-law claim for fraud rather than claims for false imprisonment and malicious prosecution. Camm argues that the Indiana claim for false arrest terminates at the point a criminal defendant is brought before a magistrate or an arrest warrant is sought from a magistrate prior to arrest. *Johnson v. Blackwell*, 885 N.E.2d 25, 30 (Ind. Ct. App. 2008) ("false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges"). Camm points out that is not the case here; no pre-process arrest was made of Camm. Rather, the defendants drafted the first probable cause affidavit with their false and recklessly made factual assertions only three days after the murder of Camm's family.

Camm notes that his Fourth Amendment claim also cannot be analogized to a claim of malicious prosecution because the United States Supreme Court and the Seventh Circuit recently considered the "malicious prosecution" moniker and ultimately discarded it. *See Manuel v. City of Joliet*, 137 S. Ct. 911 (2017); *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018). The Seventh Circuit detailed that Camm's claims involve a showing that Faith made knowing, intentional, or reckless misrepresentations in seeking Camm's arrest. *See Camm v. Faith*, 937 F.3d 1096, 1105

(7th Cir. 2019). Thus, Camm argues, his Section 1983 Fourth Amendment claim for post-process unlawful detention is more closely analogous to an Indiana state-law claim of fraud.

Under Indiana law, a claim of fraud has the following elements: "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Johnson v. Wysocki*, 990 N.E.2d 456, 460–61 (Ind. 2013). Camm's claim against Faith is that, despite his duty to be truthful in his investigation and drafting of the probable cause affidavit, he instead falsely and recklessly included information in the probable cause affidavit, which he knew or should have known to be untrue. This led to the post-process pretrial detention of Camm, which continued for the next thirteen years of his life. The Seventh Circuit had no difficulty concluding that the false statements were material. Therefore, Camm asserts, the fraud elements are much more analogous to his unlawful pretrial detention claim than Indiana's false arrest elements.

Concerning the *Brady* claim, Camm argues that none of the elements of a state-law malicious prosecution claim line up with the elements of a *Brady* claim, which is premised on the principle that the state has an affirmative duty to disclose material evidence favorable to the defendant. To support a *Brady* claim, it must be shown "(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." *State v. Hollin*, 970 N.E.2d 147, 153 (Ind. 2012). Unlike a malicious prosecution claim, Camm's *Brady* claim does not require proof of a lack of probable cause, any malice on the part of the defendant, or that the original action terminated in the plaintiff's favor. Faith had a duty to disclose material facts, and that the suppressed evidence was material lines up

9

with the fraud element that the misrepresentation be material. Thus, the *Brady* claim is more like the Indiana tort claim for fraud.

In reply, the Estate asserts that the Seventh Circuit made clear that Camm's Fourth Amendment claim was based on false statements in the first probable cause affidavit, founded on the absence of probable cause to justify Camm's detention. The truthfulness of statements made in a probable cause affidavit are judged under the Fourth Amendment, and the Fourth Amendment does not protect against fraud. There is no relation between a fraud claim and a Fourth Amendment claim based on unlawful detention. The Estate further argues,

> Cases within this circuit analogize § 1983 Fourth Amendment wrongful arrest and detention claims to the Indiana state law tort of false imprisonment, not fraud. "[A] plaintiff may establish both a § 1983 claim and an Indiana false imprisonment claim where his freedom of movement was limited or restrained in some way without probable cause." *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009). "A false arrest is one means of committing a false imprisonment, and *every false arrest has, at its core, a false imprisonment*." *Id.* "Indiana courts have used the terms 'false arrest' and 'false imprisonment' interchangeably when a plaintiff's claim stems from detention by authorities without probable cause." *Id.* "[A] seizure for Fourth Amendment purposes is an intentional limitation of a person's freedom of movement . . . Where an arrest occurs without probable cause, the plaintiff may bring a claim for unreasonable seizure . . . The standards for false imprisonment in Indiana are remarkably similar." *Id.* at 779.

(Filing No. 321 at 10.) Camm's claim for unlawful arrest and detention because of a lack of probable cause under the Fourth Amendment clearly is analogous to the Indiana tort of false imprisonment, not fraud.

The Estate also replies that the *Brady* claim and a malicious prosecution claim are most similar because they both challenge the integrity of the legal process underlying criminal prosecutions, and both claims only accrue once the underlying criminal proceedings have resolved in a plaintiff's favor. The Estate argues that the elements of fraud and a *Brady* claim fail to match, and common law fraud does not challenge the integrity of the legal process of an underlying

10

criminal prosecution. Because Camm's *Brady* claim is based on allegations of prosecutorial misconduct and attack the legal process of the criminal proceedings, which are the concerns related to malicious prosecution, Camm's *Brady* claim is most closely analogous to a claim of malicious prosecution.

The Court first notes that "comparing constitutional and common-law torts is not a one-to-one matching exercise." *McDonough v. Smith*, 139 S. Ct. 2149, 2156 n.5 (U.S. 2019). Additionally, when characterizing a Section 1983 claim, courts "decide[s] which Indiana tort is the most similar, *without molding the constitutional claim to fit within the contours of state law*." *Bentz*, 577 F.3d at 779 (emphasis added).

The Seventh Circuit's opinion in this case explained that Camm's Fourth Amendment claim concerned a wrongful arrest and detention because of a lack of probable cause to support the first probable-cause affidavit. While the Seventh Circuit indicated that the parties improperly characterized the Fourth Amendment claim as one for "malicious prosecution," ([Filing No. 239 at 16](#)–17), it went on to explain that Camm's wrongful pretrial detention claim (the Fourth Amendment claim) was founded upon a lack of probable cause to detain him. The Seventh Circuit noted that the defendants made false statements that were material (similar to an element of fraud); however, the Seventh Circuit did not stop its analysis there; it went on to consider whether the false statements were necessary to the *probable cause determination*. *Id.* at 20. At the heart of Camm's Fourth Amendment claim is a *wrongful pretrial detention* because of a lack of probable cause. The claim more closely aligns with the state-law claim of false imprisonment than fraud as suggested by Camm. The Estate's arguments concerning the Fourth Amendment claim are well-taken and are supported by the Seventh Circuit's characterization of the claim in this case. The claim is closely analogous to the Indiana tort claim of false imprisonment.

As to the *Brady* claim, this claim is based upon the suppression of evidence that was exculpatory or impeaching, thereby depriving Camm of his due process. The Seventh Circuit described the suppressed evidence as having unquestionable impeachment value that could have significantly damaged the prosecution's case. It described the evidence in the context of its absence from the criminal proceeding, thereby undermining the integrity of the legal process of the criminal prosecution. The Seventh Circuit further described Camm's defense counsel's efforts throughout the legal process to procure the suppressed evidence. And when discussing the issue of timeliness of the *Brady* claim, the Seventh Circuit noted that the claim was tied to the acquittal of Camm following all the criminal proceedings against him; the Seventh Circuit relied upon the Supreme Court decision of *McDonough v. Smith* for that conclusion, and the Estate now relies on *McDonough v. Smith* for its position that the *Brady* claim is most similar to a state-law malicious prosecution claim. Camm's *Brady* claim has more to do with the integrity of the prosecution and the legal process than with fraud. Again, the Estate's arguments concerning the *Brady* claim are well-taken and are supported by the Seventh Circuit's characterization of the claim in this case. Therefore, the Court concludes that the *Brady* claim is closely analogous to the Indiana tort claim of malicious prosecution.

**B.    Indiana's Survival Statute**

Next, the Court considers Indiana's survival statute and its effect on Camm's two claims against the Estate. Camm asserts,

The two statutory sections at issue, in order, are as follows:

**I.C. § 34-9-3-1**

(a) If an individual who is entitled or liable in a cause of action dies, the cause of action survives and may be brought by or against the representative of the deceased party except actions for:

> (1) libel;
> (2) slander;
> (3) malicious prosecution;
> (4) false imprisonment;
> (5) invasion of privacy; and
> (6) personal injuries to the deceased party;
>
> which survive only to the extent provided in this chapter.
>
> (b) An action under this chapter may be brought, or the court, on motion, may allow the action to be continued by or against the legal representatives or successors in interest of the deceased. The action is considered a continued action and accrues to the representatives or successors at the time the action would have accrued to the deceased if the deceased had survived.
>
> - and –
>
> **I.C. § 34-9-3-3**
>
> (a) If an action commenced against the decedent before the decedent's death, the action is continued by substituting the decedent's personal representatives, as in other actions surviving the defendant's death.

([Filing No. 317 at 4](#).) Camm then argues, "If the legislature had intended all the causes of action listed in I.C. 34-9-3-1 to abate upon the death of a defendant, whether brought prior to or after his death, then they could have left I.C. 34-9-3-3 unwritten." *Id.* Camm contends that application of Indiana Code § 34-9-3-3 by its plain language indicates that Camm's claims against the Estate did not abate upon Faith's death because the claims already had been brought and litigated for more than five years.

Camm notes Indiana Code § 34-9-3-3 states that "[i]f an action commenced against the decedent before the decedent's death, the action is continued . . . ." Thus, he argues, any claim brought before a decedent's death survives the death. Camm further argues that Indiana Code § 34-9-3-1's list of causes of action that abate upon death does not apply here because that section uses the language "may be brought," indicating that the section applies to actions that have not yet been initiated, and in this case, Camm's action had been commenced before Faith's death.

13

Therefore, Camm argues, Section 34-9-3-1 does not prohibit the continuation of his claims against the Estate, and Section 34-9-3-3 specifically allows his claims to survive.

A review of Indiana's "Survival of Cause of Action After Death of Party" statute in its entirety, in order, and with context leads to the conclusion that Camm is mistaken regarding the statute's application to his claims against the Estate. Section 34-9-3-1 provides the substantive rights concerning survivability of causes of action after a party dies. Camm's argument that Section 34-9-3-1 only applies to claims not yet brought ignores the plain language of the section that a court "may allow the action to be continued." Ind. Code § 34-9-3-1.

Furthermore, Camm's argument that Section 34-9-3-3 allows all claims brought before the decedent's death to survive the death would render Section 34-9-3-1 meaningless, ignores the nature of the section, and ignores subsection b of that same section. Section 34-9-3-3 does not create substantive rights for the survivability of a party's claim. Rather, it is procedural in nature, explaining that if the action was initiated before a party's death, the action continues by substituting the decedent's personal representative, but if the action is brought after a party's death, the action is prosecuted like all other claims against the estate. Ind. Code § 34-9-3-3(a), (b).

The substantive section of Indiana's survival statute, Section 34-9-3-1, clearly enumerates six causes of action—libel, slander, malicious prosecution, false imprisonment, invasion of privacy, and personal injuries to the deceased party—that do not survive the death of a party except "to the extent provided in this chapter." The chapter then provides limited circumstances for the survival of personal injury claims but not for the other five enumerated claims. *See* Ind. Code §§ 34-9-3-4; 34-9-3-5. The Court concluded above that the claims brought against the Estate are most closely analogous to the state-law claims of false imprisonment and malicious prosecution. Because Indiana's survival statute establishes that false imprisonment and malicious prosecution

14

claims do not survive the death of a party, the Court concludes that Camm's two remaining claims against the Estate abated upon the death of Faith.

Camm further argues that if the Indiana survival statute abates his claims against the Estate, then the statute is inconsistent with the purposes of Section 1983 and should not be applied. Camm points out that state law only governs survivability of a cause of action so long as the state law is not inconsistent with the federal policy underlying the cause of action under consideration, citing *Robertson*, 436 U.S. at 588. Camm notes that his causes of action arise under 42 U.S.C. § 1983, one of the "Reconstruction civil rights statutes" that the United States Supreme Court has accorded "a sweep as broad as their language." *Id.* at 590. "The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Id.* at 590–91. Camm argues that, if Indiana law abates his claims against the Estate, then the policies of compensating Camm for his injuries and deterring future abuses by state actors will be thwarted. Camm also argues Indiana's survival statute targets claims that are classic cases of official misconduct—false imprisonment, malicious prosecution, and invasion of privacy. Camm asserts that, because the survival statute is inconsistent with the purposes of Section 1983, the Court should not apply the statute in this case.

The Court notes that Camm's argument ignores significant language from the *Robertson* opinion, upon which Camm himself relied. There, the Supreme Court explained, "Despite the broad sweep of § 1983, we can find nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship." *Robertson*, 436 U.S. at 590. The Supreme Court additionally explained,

> That a federal remedy should be available, however, does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an action in disregard of the state law to which § 1988 refers us. A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to

15

>lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.

*Id.* at 593.

Camm makes the generalized assertion that Indiana's survival statute is inconsistent with Section 1983's purposes and essentially argues that the statute should be set aside in this case because it causes him to lose the litigation against the Estate. The Supreme Court rejected this argument. Section "1988 quite clearly instructs [the Court] to refer to state statutes," and the state statute directs that claims for false imprisonment and malicious prosecution abate upon a party's death. Indiana's survival statute does not, as suggested by Camm, target claims that are classic cases of official misconduct; the statute also abates claims for libel, slander, and personal injuries to the deceased party, and it also does not address a myriad of other civil rights claims. Therefore, the Court rejects Camm's invitation to not apply the Indiana survival statute because of an alleged inconsistency with the purposes of Section 1983.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Judgment on the Pleadings filed by Defendant Gordon Ingle, the personal representative of the Estate of Stanley O. Faith ([Filing No. 310](#)). Camm's Fourth Amendment claim and *Brady* claim against the Estate of Stanley O. Faith and Gordon Ingle as the personal representative of the Estate are **dismissed with prejudice**. With no claims remaining against them, the Estate of Stanley O. Faith and Gordon Ingle are terminated as defendants in this action. This Order does not affect the Fourth Amendment claim and *Brady* claim against Defendants Clemons, Englert, and Stites.

**SO ORDERED.**

Date: 6/16/2021

*Tanya Walton Pratt*

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Garry R. Adams
ADAMS LANDENWICH WALTON, PLLC
garry@justiceky.com

Theodore J. Blanford
HUME SMITH GEDDES GREEN & SIMMONS
tblanford@humesmith.com

Daniel J. Canon
CLAY DANIEL WALTON & ADAMS
dan@dancanonlaw.com

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Betsy M. DeNardi
INDIANA ATTORNEY GENERAL
Betsy.DeNardi@atg.in.gov

James Alex Emerson
COOTS HENKE & WHEELER
aemerson@chwlaw.com

Christi M. Foust
INDIANA ATTORNEY GENERAL
christi.foust@atg.in.gov

Matthew L. Hinkle
COOTS HENKE & WHEELER
mhinkle@chwlaw.com

Andrew Thomas Lay
ADAMS LANDENWICH WALTON
pete@justiceky.com

John Vincent Maurovich
COOTS HENKE & WHEELER
jmaurovich@chwlaw.com

Terry Wayne Tolliver
BRATTAIN MINNIX GARCIA
Terry@BMGIndy.com

Cory Christian Voight
INDIANA ATTORNEY GENERAL
cory.voight@atg.in.gov

17