# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

|                               |     |                              |
|-------------------------------|-----|------------------------------|
| DAVID R. CAMM,                | )   |                              |
|                               | )   |                              |
| Plaintiff,                    | )   |                              |
|                               | )   |                              |
| v.                            | )   | Case No. 4:14-cv-00123-TWP-DML |
|                               | )   |                              |
| SEAN CLEMONS, ROBERT STITES, and | ) |                          |
| RODNEY ENGLERT,               | )   |                              |
|                               | )   |                              |
| Defendants.                   | )   |                              |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Joint Motion for Partial Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Sean Clemons ("Clemons"), Robert Stites ("Stites"), and Rodney Englert ("Englert") (collectively, "Defendants") (Filing No. 323).[1] Plaintiff David R. Camm ("Camm") initiated this action in 2014 against numerous law enforcement officers, prosecutors, and other individuals and entities, asserting claims for violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 as well as state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, and *respondeat superior*. Following settlement discussions, stipulations of dismissal, motions for summary judgment, an appeal to the Seventh Circuit, remand from the Seventh Circuit, and a motion for judgment on the pleadings, only two claims remain for trial against Defendants Clemons, Englert, and Stites. The claims are (1) Camm's Fourth Amendment claim based on the first probable cause affidavit, and (2) a *Brady* claim based on the suppression of Stites' lack of qualifications and suppression of the facts surrounding the handling of a DNA profile. The

---

[1] Gordon Ingles, as personal representative of the Estate of Stanley Faith, joined in the Motion for Summary Judgment, however, he was recently dismissed as a defendant in this action pursuant to the Court's Entry on Motion for Judgment on the Pleadings (Filing No. 350 at 16).

Defendants filed a Joint Motion for Partial Summary Judgment on these two remaining claims. For the following reasons, the Court **grants in part and denies in part** the Motion.

## I.     <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Camm as the non-moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Additionally, for purposes of this Motion, the Court borrows liberally from the Seventh Circuit's opinion in this matter for this background section.

> This case arises from a heinous triple murder that occurred almost [twenty-one] years ago in Georgetown, Indiana, a small town near the Kentucky border. The plaintiff is David Camm, a former state trooper who was twice convicted of the crimes but was acquitted after a third trial. He then filed this suit for damages for the years he spent in custody.

([Filing No. 239 at 4](#).)

> Camm came home on the night [of September 28, 2000,] and found his wife and two young children shot to death in the garage. Two days later law-enforcement officers obtained a warrant for his arrest, relying almost exclusively on the observations of Robert Stites—a plainly unqualified forensic assistant who was not trained to do anything more than photograph evidence. Taking a far more active role in the investigation, Stites told the investigators that several bloodstains on Camm's T-shirt were "high velocity impact spatter," indicating that Camm was present and in close proximity when one or more of the victims was struck by a bullet. Investigators and prosecutors exaggerated Stites's qualifications in a probable-cause affidavit and at trial, and a jury found Camm guilty. The judgment was reversed on unrelated grounds, and on retrial Camm was again convicted. That judgment too was reversed. A jury found him not guilty the third time around. He was released after 13 years in custody.

> This lawsuit under 42 U.S.C. § 1983 followed. The defendants are several investigators, two prosecutors, and Stites and his boss, who backed up his assistant's opinions. Camm alleges that the defendants willfully or recklessly made false statements in three probable-cause affidavits that led to his arrest and continued custody while he awaited trial and retrial. Though the parties and the district judge referred to this as a claim for malicious prosecution, we've since explained that "malicious prosecution" is the wrong label. It's a Fourth Amendment claim for

wrongful arrest and detention. The suit also raises a claim of evidence suppression in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

*Id.* at 5.

> …. Camm presented enough evidence to proceed to trial on the Fourth Amendment claim, but only as it relates to the first probable-cause affidavit. A trial is also warranted on the following aspects of the *Brady* claim: whether some of the defendants suppressed evidence of Stites's lack of qualifications and their failure to follow through on a promise to run a DNA profile through a law-enforcement database to check for a match.

*Id.* at 6.

Defendant Clemons was an Indiana State Police officer and the lead investigator of the murders. Defendants Englert and Stites were employees of Englert Forensic Consultants, LLC, a forensic consulting firm, who assisted in the investigation by collecting evidence at the crime scene ([Filing No. 1 at 39](#), 44–45).

Following the Seventh Circuit Court of Appeals' Order and Mandate, this Court issued an Order, noting that the case had been

> remanded for trial on Camm's Fourth Amendment claim against Stites, Englert, Faith,[2] and Clemons to the extent that the claim rests on the first probable-cause affidavit. Trial is also warranted on the *Brady* claim against the same four defendants for suppression of Stites's lack of qualifications and against Faith and Clemons for suppression of the facts surrounding their handling of the DNA profile on Boney's sweatshirt.

([Filing No. 240 at 2](#).)

The following additional facts also are relevant to the pending Motion for Summary Judgment.

On October 1, 2000, three days after the murders were committed, the first probable cause affidavit against Camm was submitted to and granted by a judge of the Floyd County Superior

---

[2] As noted above, the Estate of Stanley Faith and Gordon Ingles, as personal representative of the Estate of Stanley Faith, have since been dismissed as defendants in this action pursuant to the Court's Entry on Motion for Judgment on the Pleadings ([Filing No. 350 at 16](#)).

Court ([Filing No. 325-1](#)). Camm was arrested that same day ([Filing No. 325-2 at 1](#)). An initial hearing was held on October 2, 2000. On January 10, 2001, the state court held a hearing to address Camm's motion for discharge from incarceration, which was taken under advisement. *Id.* at 2, 5; [Filing No. 325-11](#). On February 27, 2001, the state court held a hearing on Camm's renewed motion for hearing on petition for discharge from incarceration, which was again taken under advisement ([Filing No. 325-2 at 8](#)–9; [Filing No. 325-12](#)).

The first trial against Camm began on January 7, 2002 ([Filing No. 325-2 at 31](#)). On March 15, 2002, the jury began deliberations, and on March 17, 2002, the jury informed the court of a deadlock. The jury was instructed to re-read the jury instructions and return to deliberations. On March 17, 2002, the jury returned a verdict finding Camm guilty on all three counts of murder. Judgment of conviction was entered on March 19, 2002. *Id.* at 45–46. On April 11, 2002, a sentencing hearing was held, and Camm was committed to the Indiana Department of Correction. *Id.* at 47–48.

On August 12, 2002, Camm filed a notice of appeal to the Indiana Court of Appeals. *Id.* at 49. On August 10, 2004, the Indiana Court of Appeals reversed all convictions because the trial court erred in admitting into evidence improper character evidence. The Indiana Court of Appeals noted that Camm did not assert the evidence was insufficient to support his convictions, so he could be retried. *Camm v. State of Indiana*, 812 N.E.2d 1127, 1138 (Ind. Ct. App. 2004).

On November 15, 2004, Camm filed a motion for release due to a lack of probable cause, and on November 16, 2004, an amended probable cause affidavit was submitted by Detective Gary Gilbert ("Detective Gilbert") to a judge of the Floyd County Superior Court. Camm was ordered to be held without bond ([Filing No. 325-2 at 52](#); [Filing No. 325-3](#)).

On November 30, 2004, upon Camm's motion for change of venue, the criminal case was transferred to Warrick County Superior Court. On December 9, 2004, Camm filed an amended motion for release due to a lack of probable cause. On January 26, 2005, a second amended probable cause affidavit was submitted to the judge of the Warrick County Superior Court (Filing No. 325-5 at 1–3).

Also on January 26, 2005, a hearing on various matters was held in the Warrick County Superior Court. Following the hearing, the judge ordered bond set at $20,000.00, cash only, effective that date. Camm was to be "admitted and placed on electronic monitoring . . . prior to his release from custody" and being placed on "electronic house arrest." *Id.* at 3. Camm's electronic-monitoring release came with the following conditions: Camm would be responsible for all costs associated with the electronic monitoring and would be subject to terms imposed by the specific provider. Camm's travel was limited to Bloomington, Indiana, to consult with his attorneys as necessary and to Warrick County, Indiana, for purposes of attending court proceedings. His travel was further restricted to Floyd and Clark Counties. Camm was permitted to have employment as long as it did not take him outside of Floyd or Clark Counties. He was ordered to reside at Sam Lockhart's (Camm's uncle) residence, and he was ordered to be in his residence from 9:00 p.m. until 6:00 a.m. each day. Camm was prohibited from consuming alcohol and controlled substances, from committing further criminal violations, and from using, possessing, or having contact with any firearms. He was prohibited from applying for or obtaining a passport. And Camm was ordered to have no contact with certain families. *Id.* at 3–4; Filing No. 325-7. The next day, on January 27, 2005, Camm posted bond and was released subject to electronic monitoring and the other conditions (Filing No. 325-5 at 4–5).

Less than six weeks later, on March 9, 2005, the State of Indiana filed a motion to dismiss without prejudice in the Warrick County Superior Court, which was granted by the court without objection from Camm. The court ordered the $20,000.00 cash bond released and ordered Camm released from electronic monitoring and from all pretrial restrictions and conditions. *Id.* at 8. However, that same day (March 9, 2005), a probable cause affidavit with charging information was submitted to the Floyd County Superior Court against Camm, commencing the second criminal case and ultimately resulting in the second criminal trial. A no-bond warrant was issued for Camm ([Filing No. 325-10 at 2](#)) and Camm was arrested at his place of employment that afternoon by Detective Gilbert. After he was arrested and handcuffed, Camm's electronic monitoring ankle bracelet was removed ([Filing No. 331-1 at 1](#)).

Still on March 9, 2005, Camm, through his counsel, then filed an objection to the dismissal without prejudice in the Warrick County Superior Court, asserting that the State's dismissal was a fraud and ruse to forum shop and get Camm's case back in the Floyd County Superior Court ([Filing No. 325-5 at 8](#)). The Warrick County Superior Court judge noted that the Floyd County Superior Court had assumed jurisdiction over the newly-filed criminal counts against Camm, so he deferred any jurisdictional issues to the Indiana Supreme Court by way of a petition for writ of mandate and prohibition. *Id.* at 8–9. On May 31, 2005, the Floyd County Superior Court received a *writ of mandamus* and prohibition from the Indiana Supreme Court, which ordered the transfer of Camm's criminal case back to the Warrick County Superior Court ([Filing No. 325-10 at 8](#)).

On January 16, 2006, the second jury trial began in Warrick County. The trial resulted in a jury verdict finding Camm guilty on all three counts of murder. Camm filed a direct appeal to the Indiana Supreme Court, and on June 26, 2009, that court reversed the convictions because the trial court erred in admitting speculative and hearsay evidence. The Indiana Supreme Court noted

that, because there was sufficient evidence to support the convictions, Camm could be retried. *Camm v. State of Indiana*, 908 N.E.2d 215, 219–20 (Ind. 2009).

In December 2009, the State refiled murder charges against Camm. *Camm v. State of Indiana*, 957 N.E.2d 205, 208 (Ind. Ct. App. 2011). Camm was tried a third time, beginning on August 12, 2013. On October 24, 2013, Camm was acquitted of all charges relating to the murders of his wife and children, and he was released from custody (Filing No. 1 at 36; Filing No. 40 at 49–50). One year later, on October 24, 2014, Camm initiated this lawsuit (Filing No. 1).

## II.    SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory

statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.    DISCUSSION

In their Motion for summary judgment, the Defendants argue that the two-year statute of limitations bars Camm's Fourth Amendment claim for wrongful arrest and detention. They additionally argue that the scope of any damages for the two remaining claims must be limited. The Court will address each argument in turn.

### A.    Statute of Limitations for the Fourth Amendment Claim

The Defendants argue that the Seventh Circuit confined Camm's Fourth Amendment claim to the first probable cause affidavit, expressly excluding from the claim the second and third probable cause affidavits. The Seventh Circuit did not consider the statute of limitations issue related to the Fourth Amendment claim because it was not argued in this Court in the previous summary judgment proceedings. However, the Defendants assert, the defense is still available, and when considering the facts associated with Camm's conditional release, the statute of limitations operates to preclude the Fourth Amendment claim.

The statute of limitations applicable to § 1983 suits in Indiana is two years. *Logan v. Wilkins*, 644 F.3d 577, 581 (7th Cir. 2011). The Defendants argue that "a Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1013 (7th Cir. 2019). And the conclusion of the detention period for purposes of the statute of limitations accrual occurs when pretrial release conditions do not impose significant restrictions on liberty. *Id.* at 1016–17. Thus, the Defendants argue, the statute of limitations began running on Camm's Fourth Amendment claim when he was released from custody on January 27, 2005, under conditions that did not amount to custody. Camm filed his Complaint in this action on October 24, 2014, well beyond the two-year period for bringing his claim. Therefore, the Defendants contend, Camm's Fourth Amendment claim must be dismissed as untimely.

Camm responds that his Fourth Amendment claim for unlawful pretrial detention runs for the entirety of the time he was in custody from his arrest on October 1, 2000, to his acquittal and release on October 24, 2013. He argues that the Defendants simply are wrong on their interpretation of the facts concerning his house arrest in 2005, and that event did not amount to a release from custody to trigger the statute of limitations for his claim. Camm had to post a financial bond and was electronically-monitored. He was not ordered to simply get permission before he left the state to travel; rather, he was ordered that he was not permitted to leave a geographic area of only two counties except to assist in the preparation of his defense or appear in court. Camm asserts that such restriction was an onerous limitation on what would otherwise be his right to freely travel about the state and country at large. Additionally, Camm's limited travel was further restricted to only fifteen hours of the day; otherwise he was restricted to house arrest at his uncle's residence in Floyd County. The state trial court even used the term "electronic house arrest" when it ordered that Camm be monitored and pay for such monitoring. Camm also had many restrictions

on his activities. He asserts that his house arrest amounted to a seizure for purposes of the Fourth Amendment. Camm argues this is supported by the Supreme Court's recent decision in *McDonough v. Smith* where the Court noted a deprivation of liberty occurs when the criminal defendant is "subject to restrictions on his ability to travel and other 'restraints not shared by the public generally.'" 139 S. Ct. 2149, 2156 n.4 (U.S. 2019) (internal citation omitted).

In any event, Camm argues, his claim for unlawful pretrial detention did not accrue until his acquittal in 2013 because Fourth Amendment claims like Camm's, which call into question the validity of the underlying charges against him, do not accrue until the underlying charges are finally dismissed or the defendant is acquitted. Camm asserts that the Supreme Court recently explained the statute of limitations on a plaintiff's "§ 1983 claim alleging that he was prosecuted using fabricated evidence began to run when the criminal proceedings against him terminated in his favor." *McDonough*, 139 S. Ct. at 2161. Since then, other courts in this Circuit have relied on the *McDonough* decision to hold that the same rationale of requiring a favorable termination of criminal charges prior to bringing a Section 1983 Fourth Amendment claim is appropriate.

Camm points to the Seventh Circuit's decision in *Savory v. Cannon* where the court held that "no section 1983 claim could proceed until the criminal proceeding ended in the defendant's favor or the resulting conviction was invalidated within the meaning of *Heck*." 947 F.3d 409, 418 (7th Cir. 2020). In that case, the plaintiff had been released from state custody in 2011 with a conviction on his record, but his Section 1983 claim did not accrue until the governor of Illinois pardoned him, amounting to a favorable termination. Camm argues that this Court should follow the rationale and holdings of *McDonough* and *Savory* and conclude that Camm timely brought his Fourth Amendment claim for unlawful pretrial detention after he was finally acquitted of the criminal charges against him in 2013.

In reply, the Defendants argue that standard conditions of pretrial release do not amount to a seizure under the Fourth Amendment, and Camm's release conditions in 2005 were nothing more than standard conditions of release. *See Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) (travel restrictions and standard conditions of release are insufficient restraints on freedom of movement to constitute a seizure). Therefore, the Defendants assert, Camm's release in 2005 triggered the statute of limitations on his Fourth Amendment claim, and he untimely filed the claim in 2014.

The Defendants additionally argue that the Seventh Circuit held in *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018), that a Fourth Amendment wrongful detention claim accrues when the detention ends. The Seventh Circuit highlighted this in its *Camm* decision. *See Camm v. Faith*, 937 F.3d 1096, 1107 (7th Cir. 2019) ("We held in *Manuel* that a Fourth Amendment claim for wrongful detention accrues when the detention ends."). Furthermore, the Defendants assert, even if the Court considers *McDonough* for the proposition that the Fourth Amendment claim does not accrue until a favorable termination rather than at the time of release from custody, favorable termination occurred when Camm's first conviction was reversed on direct appeal. Camm contends favorable termination occurred when he was adjudicated not guilty after being found guilty in two prior trials. However, the Defendants contend, the Supreme Court enumerated the ways a favorable termination comes about: "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). The Defendants argue that, under this framework, Camm's claim would have accrued when his first

criminal conviction was reversed on direct appeal on August 10, 2004, still outside the statute of limitations period.

The Court is not persuaded by the Defendants arguments. Here, the following legal principles apply. "[C]laims accrue when a plaintiff has a complete and present cause of action." *Savory*, 947 F.3d at 414. The timing for accrual "is presumptively when the plaintiff has a complete and present cause of action, though the answer is not always so simple. Where, for example, a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *McDonough*, 139 S. Ct. at 2155 (internal citations and quotation marks omitted). "The [Supreme] Court has never suggested that the date on which a constitutional injury first occurs is the only date from which a limitations period may run." *Id.* at 2160.

A Section 1983 plaintiff whose claim attacks the validity of a conviction or sentence must wait for the "favorable termination of his prosecution. As *Heck* explains, [the] favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id.* at 2156–57. The favorable-termination "requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation." *Id.* at 2157.

As another district court in this Circuit explained just a few months ago,

> *McDonough* held that *Heck* barred a plaintiff whose first trial ended in a mistrial, and who was then retried and acquitted, from bringing a fabricated evidence claim until the underlying criminal proceedings had resolved in his favor, meaning until his acquittal—which in turn means that the claim did not accrue until that time. . . . Because the State elected to re-try [the plaintiff] after the state appellate court's [] reversal of the convictions entered at his first trial, [the plaintiff] remained fully subject to pending criminal charges. Those are precisely the circumstances in which, according to *McDonough*, a § 1983 claim has not yet accrued.

*Savory v. Cannon*, 2021 WL 1209129, at *4 (N.D. Ill. Mar. 31, 2021).

Like the Defendants here, the defendants in the *Savory* case argued that the Fourth Amendment unlawful detention claim was untimely because it accrued when the detention ended, relying on *Manuel*. The plaintiff contended that *McDonough* compelled the conclusion that his unlawful detention claim accrued only after he was pardoned, not when the detention ended. The court there determined, "[a]s noted, *McDonough* makes clear that a plaintiff must wait until the favorable termination of the criminal proceedings to bring a § 1983 claim that, if successful, would be incompatible with his guilt." *Savory*, 2021 WL 1209129, at *6.

When the *Savory* case was before the Seventh Circuit, the defendants asserted that the federal claims accrued when the plaintiff was released from state custody even though his conviction remained intact. However, the Seventh Circuit noted, the Supreme "Court thus expressly rejected a rule tied to the end of custody," and instead, it retained the "rule requir[ing] that a plaintiff *always* obtain a favorable resolution of the criminal conviction before bringing a section 1983 claim that would necessarily imply the invalidity of a conviction or sentence." *Savory*, 947 F.3d at 420 (emphasis in original).

In this case, Camm's Fourth Amendment claim for wrongful detention necessarily implies the invalidity of his conviction, so his claim accrued when he obtained a favorable termination of the underlying criminal proceedings against him. This follows the direction from the Supreme Court in *McDonough* and *Heck* and is consistent with the Seventh Circuit's recent decision in *Savory*. Relying on language from the Supreme Court's decision in *Heck*, the Defendants contend that Camm obtained a favorable resolution when his first criminal conviction was reversed on direct appeal on August 10, 2004. While the reversal by the Indiana Court of Appeals was a favorable decision, it was not a favorable termination of the criminal proceedings against Camm. When reversing the first conviction, the Indiana Court of Appeals explicitly noted that Camm was

subject to being retried, and the State continued to pursue the criminal charges against him all the way through two more trials. This Court agrees with the district court in *Savory*: "[b]ecause the State elected to re-try [the plaintiff] after the state appellate court's [] reversal of the convictions entered at his first trial, [the plaintiff] remained fully subject to pending criminal charges. Those are precisely the circumstances in which, according to *McDonough*, a § 1983 claim has not yet accrued." *Savory*, 2021 WL 1209129, at *4.

On October 24, 2013, Camm was acquitted of all the criminal charges against him, and he was released from custody. It was at that point that Camm obtained a favorable termination of the underlying criminal proceedings against him. Therefore, Camm's Fourth Amendment claim for wrongful arrest and detention accrued on October 24, 2013, and he brought the claim one year later on October 24, 2014. Thus, Camm's Fourth Amendment claim was timely filed and is not barred by the statute of limitations. The Defendants' Joint Motion for Partial Summary Judgment based on the statute of limitations argument is **denied**.[3]

**B. <u>Scope of Damages</u>**

The Defendants next contend that Camm's damages for the Fourth Amendment and *Brady* claims are limited to the first criminal trial against him. The Court will address each claim in turn.

---

[3] The Court briefly notes that, even if it applied the standard recommended by the Defendants—the claim accrued when the detention ended—the claim still would not be barred by the statute of limitations because Camm's detention ended on October 24, 2013. Camm's short-lived, electronic-monitored house arrest in 2005 did not amount to a release from custody or detention. Camm had to post a cash-only $20,000.00 bond and was immediately placed under electronic monitoring with an ankle bracelet, for which he had to pay all expenses. He was not permitted to leave the geographic area of only two counties except to go to Bloomington, Indiana, to consult with his attorneys as necessary and to Warrick County, Indiana, for purposes of attending court proceedings (a reminder to Camm that his "outside" travel was limited to criminal proceedings against him). He had to live at his uncle's house and had to be inside the house from the hours of 9:00 p.m. until 6:00 a.m. each day. Camm's activities were limited, including a prohibition against any alcohol consumption and any contact with any firearms. He also was prohibited from applying for or obtaining a passport and contacting his deceased wife's family. This exceeds the standard pretrial release conditions— such as having to request permission to leave the *state* and having to attend *one* pretrial hearing in court—that likely do not amount to a "seizure" under the Fourth Amendment in the Seventh Circuit. Camm was "subject to restrictions on his ability to travel and other restraints not shared by the public generally," *McDonough*, 139 S. Ct. at 2156 n.4, which resulted in a deprivation of his liberty.

1. **Damages for the Fourth Amendment Claim**

The Defendants argue that Camm's damages related to the Fourth Amendment claim are limited to the first criminal matter because the Seventh Circuit limited Camm's Fourth Amendment claim to the first probable cause affidavit. The Seventh Circuit specifically excluded from the claim the second and third probable cause affidavits. *See Camm*, 937 F.3d at 1108 ("So the Fourth Amendment claim may proceed to trial as it relates to the first probable-cause affidavit. The second and third affidavits, however, are a different matter. . . . In sum, the Fourth Amendment claim against four defendants—Stites, Englert, Faith, and Clemons—may proceed to trial as it relates to the first probable-cause affidavit.").

The Defendants argue that Camm's damages for wrongful detention without probable cause ceased when probable cause was established. They point out that the first probable cause affidavit was submitted on October 1, 2000, and Camm was arrested that same day. On January 7, 2002, the first trial began, and on March 17, 2002, Camm was convicted. On August 10, 2004, the Indiana Court of Appeals reversed Camm's convictions. Then on November 16, 2004, another probable cause affidavit was submitted to a judge of the Floyd County Superior Court. On January 26, 2005, yet another probable cause affidavit was submitted, this time to a judge in the Warrick County Superior Court.

The Defendants assert that Camm was able to challenge the first probable cause affidavit during the pretrial hearing on February 27, 2001, when the state court considered Camm's renewed motion for hearing on petition for discharge from incarceration. The Defendants argue that damages necessarily cut off on February 27, 2001, before the matter continued to the first jury trial because the only reasonable inference to be drawn is that Camm had a full and fair opportunity to contest the finding of probable cause and lost—probable cause was established.

The Defendants continue,

Assuming, hypothetically, that damages do not cut off after the probable cause hearing, damages cannot accrue after the jury convicted Camm on March 17, 2002. Unlike the lesser standard required for a probable cause determination, a criminal conviction requires the much higher standard of proof beyond a reasonable doubt. Under any circumstances, the very latest damages cease when Plaintiff was released under certain conditions that did not amount to custody on January 26, 2005.

(Filing No. 324 at 11.)

Camm responds that the damages for the Fourth Amendment claim span the length of his incarceration until his release from custody in 2013. He argues his damages are not cut off by the February 27, 2001 pretrial hearing as the designated evidence shows only that the motion was taken under advisement, not that it was ruled upon against Camm because probable cause existed. The Seventh Circuit explained in this case,

"Probable cause exists to arrest a suspect if at the time of arrest the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Gower v. Vercler*, 377 F.3d 661, 668 (7th Cir. 2004) (quotation marks and alteration omitted). When an arrest is judicially authorized, as it was in this case, "we presume the validity of [the] warrant and the information offered to support it." *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010). But "the presumption may give way on a showing that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth[ ] made false statements to the judicial officer and that the false statements were necessary to the judicial officer's determination." *Id.* (quotation marks and alterations omitted).

*Camm*, 937 F.3d at 1105. The Seventh Circuit then went on to conclude that "there is a wealth of evidence here that Stites, Englert, Faith, and Clemons contributed false statements and withheld crucial information, either intentionally or with reckless disregard for the truth. So the presumption of validity must give way." *Id.* at 1106.

Camm argues the presumption would give way here to the same wealth of evidence of intentional and reckless disregard for the truth in the hearing testimony given by Clemons to the

Floyd County judge. There is no way to know whether those false statements were necessary to the judicial officer's determination because there is no record of the judicial officer making a determination as to the motion alleging a lack of probable cause.

Regarding the Defendants' contention that damages should cut off at the first conviction after the first jury trial, Camm argues that "the effect of a reversal of a judgment is to vacate and nullify the judgment, which restores the parties to the position they held before judgment." *Gibson v. State*, 661 N.E.2d 865, 867 (Ind. Ct. App. 1996). Thus, Camm asserts, if the reversal of his first and second convictions nullify those convictions, then they can have no preclusive effect to his current case. Camm further argues that his "release to house arrest" in 2005 cannot cut off his damages because that event was not a release from custody. Camm concludes that the natural and proximate result of the Defendants' false statements in the first probable cause affidavit was his ongoing incarceration until 2013 when he was acquitted. Thus, the damages should span that timeframe.

Addressing the first proposed cutoff date for damages—February 27, 2001—the Court observes that the Defendants are asking the Court to draw an inference in their favor from the designated evidence, but the Court cannot do so on a motion for summary judgment; inferences are drawn in favor of the non-moving party, not the moving party. *See Zerante*, 555 F.3d at 584. The evidence indicates that Camm's motion for discharge (related to probable cause) was taken under advisement. It does not clearly indicate that the state court judge affirmatively found probable cause existed. Thus, the Defendants failed to establish by the evidence that February 27, 2001, was the date probable cause was established for purposes of summary judgment. Additionally, Camm's argument is well-taken that the Seventh Circuit held the presumption of

validity of the first probable cause affidavit was overcome, and this also should apply to the February 27, 2001 hearing.

The next proposed cutoff date for damages—March 17, 2002, when a jury first convicted Camm—appropriately fits Camm's Fourth Amendment claim for wrongful arrest and detention because of a lack of probable cause. The Defendants' argument is well-taken that a criminal conviction requires the much higher standard of proof beyond a reasonable doubt rather than the lesser standard required for a probable cause determination. A jury determined that Camm was guilty of murder beyond a reasonable doubt. Camm points to the general proposition that "the effect of a reversal of a judgment is to vacate and nullify the judgment, which restores the parties to the position they held before judgment," *Gibson*, 661 N.E.2d at 867; however, that is not applicable to the facts and issues here. In this case, the reversal of Camm's convictions were based on the improper admission of evidence during trial, not because there was insufficient evidence to support the convictions (or a lack of probable cause). The appellate courts specifically noted that there was sufficient evidence to support the convictions and explained that Camm could be retried, which is a clear indication that probable cause existed. The Court's conclusion that damages for the Fourth Amendment claim cut off at the time of the first conviction (March 17, 2002) also is consistent with the Seventh Circuit's decision in this case that the claim relates to the first probable cause affidavit only.[4]

Because the Court has determined that March 17, 2002 is the appropriate cutoff date for damages for Camm's Fourth Amendment claim, the Court need not address the argument that Camm's "release to house arrest" in 2005 could be an appropriate cutoff.

---

[4] The Court notes that, while the Fourth Amendment claim for wrongful arrest and detention based on a lack of probable cause could not have accrued until Camm obtained a favorable termination of the criminal proceedings against him, the damages for wrongful arrest and detention based on a lack of probable cause appropriately cut off when probable cause was established.

2.    **Damages for the *Brady* Claim**

Lastly, the Defendants argue that Camm's damages related to the *Brady* claim are limited to the first criminal trial. Camm's *Brady* claim is founded on two instances of evidence suppression: the Defendants' failure to disclose Stites' lack of qualifications and the representation that a DNA test was performed when in fact it had not been run. The Defendants assert that, even if Camm could prove his *Brady* claim at trial, damages would be limited to the first trial because both items of evidence were undoubtedly not suppressed prior to the second trial. Because the *Brady* claim is only applicable to conduct occurring as part of the first trial, and the evidence which forms the basis of Camm's claim was available by the second trial, Camm's damages based on evidence suppression must be limited to the first trial only.

Concerning the representation that a DNA test had been performed when it had not been run, the Defendants explain that, on March 2, 2005, Leslie Harmon, an Indiana State Police DNA analyst, issued a report that included a gray Hanes XL sweatshirt found lying next to Bradley Camm. "The DNA profile obtained from the sweatshirt (item 505) was searched in the Indiana DNA Database and was found to be consistent with the convicted offender sample from Charles Boney." (Filing No. 325-15 at 1.) Then on March 9, 2005, a probable cause affidavit with charging information was submitted to the Floyd County Superior Court, which commenced the second criminal case against Camm that ultimately resulted in the second criminal trial. Charles Boney also was charged alongside Camm (Filing No. 325-10 at 2).

The second jury trial began on January 9, 2006, nearly ten months after the discovery of Charles Boney's profile. The Defendants argue, since "evidence cannot be said to have been suppressed in violation of *Brady* if it was already known to the defendant," the *Brady* claim

involving the lack of DNA testing does not apply to the second trial because Camm knew of the evidence. *See Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017).

The Defendants contend that damages for the *Brady* claim related to the DNA testing cut off when the Indiana Court of Appeals reversed Camm's first conviction on August 10, 2004, pointing to *Gibson*, 661 N.E.2d at 867 ("the effect of a reversal of a judgment is to vacate and nullify the judgment, which restores the parties to the position they held before judgment"). Alternatively, the cutoff date for damages should be March 9, 2005, when the first criminal case was dropped and the second probable cause affidavit was filed, which contained the information about Charles Boney. There is no dispute that the DNA testing had been performed and disclosed to Camm well before the second trial, so he could make use of the evidence during his second trial, and the *Brady* claim damages should be cut off.

Regarding the failure to disclose Stites' lack of qualifications, the Defendants contend that damages cut off after the first trial. Stites testified during the first and second jury trials, and during the second trial, Camm's counsel cross-examined Stites and impeached him about the accuracy and truthfulness of his qualifications using a transcript of his testimony from the first trial. This occurred on January 18 and 19, 2006. The Defendants argue that, at least by that date (but in reality, sooner than the second trial), Camm was aware of the impeachment evidence regarding Stites, so there was no *Brady* violation beyond that point. The Defendants suggest the appropriate cutoff date as August 10, 2004, when the Indiana Court of Appeals reversed Camm's first conviction.

Camm responds that the damages for the *Brady* claim should extend through the entire period when the exculpatory and impeachment evidence was withheld because, "under common-law causation principles, he who creates the defect is responsible for the injury that the defect

20

foreseeably causes later." *Avery*, 847 F.3d at 442 (internal citation and quotation marks omitted). Camm argues that *Brady* claim damages apply to periods of detention during which the exculpatory evidence is withheld. Camm asserts that his "damages related to the undisclosed CODIS match to Boney's DNA should run at least until he had the opportunity to take advantage of the belatedly disclosed evidence at the second trial." ([Filing No. 330 at 21](#).) Concerning Stites' lack of qualifications, Camm argues the damages should extend the entire length of his thirteen years of incarceration because Stites lied about his qualifications during the trials and continued his lies even during his deposition in this case.

The Court first notes that "evidence for *Brady* purposes is deemed 'suppressed' if (1) the prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). Therefore, Camm's *Brady* claim damages cut off at the point in time when the evidence was disclosed to him.

Regarding the evidence of the DNA testing, the damages for suppressing this evidence are limited to March 9, 2005, when the second probable cause affidavit was filed, which contained the information about Charles Boney. While the DNA testing report was issued a week earlier on March 2, 2005, it is not clear from the evidence whether the report was provided to Camm on that date. However, once the second probable cause affidavit was filed on March 9, 2005, Camm would have known, or at least could have known "through the exercise of reasonable diligence," that the DNA profile testing had been completed. The Court further determines that the Defendants' suggested date of August 10, 2004 (when the Indiana Court of Appeals reversed

Camm's first conviction) is inappropriate because that date does not coincide with the timing of when the exculpatory evidence was no longer suppressed.

Regarding the evidence of Stites' lack of qualifications, the damages for suppressing this evidence are limited to January 18, 2006, when Camm's counsel impeached Stites concerning his qualifications during the second trial. The Court uses this date for the scope of damages because there is nothing in the evidence that indicates the Defendants disclosed (or Camm became aware of) any evidence concerning Stites' lack of qualifications on a specific earlier date. The Court declines to adopt Camm's suggested later date because he clearly knew at the time of the second jury trial that Stites lacked qualification and was able to impeach him during that trial. That Stites continued to lie about his qualifications even during this litigation does not negate the fact that Camm became aware of that impeachment evidence at least by the time of the second trial.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS in part and DENIES in part** the Joint Motion for Partial Summary Judgment filed by Defendants Clemons, Englert, and Stites (Filing No. 323). Camm's Fourth Amendment claim for wrongful arrest and detention was timely filed and is not barred by the statute of limitations. Damages for Camm's Fourth Amendment claim are limited in scope to March 17, 2002, when Camm was first convicted by a jury. Damages for Camm's *Brady* claim are limited in scope to March 9, 2005, for the evidence about the DNA testing and January 18, 2006, for the evidence about Stites' lack of qualifications.

**SO ORDERED.**

Date: 6/29/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew Thomas Lay
ADAMS LANDENWICH WALTON
pete@justiceky.com

Daniel J. Canon
CLAY DANIEL WALTON & ADAMS
dan@dancanonlaw.com

Garry R. Adams
ADAMS LANDENWICH WALTON, PLLC
garry@justiceky.com

Betsy M. DeNardi
INDIANA ATTORNEY GENERAL'S OFFICE
Betsy.DeNardi@atg.in.gov

Christi M. Foust
INDIANA ATTORNEY GENERAL'S OFFICE
christi.foust@atg.in.gov

Cory Christian Voight
INDIANA ATTORNEY GENERAL'S
OFFICE
cory.voight@atg.in.gov

Terry Wayne Tolliver
BRATTAIN MINNIX GARCIA
Terry@BMGIndy.com

Christopher Douglas Cody
HUME SMITH GEDDES GREEN &
SIMMONS
ccody@humesmith.com

Theodore J. Blanford
HUME SMITH GEDDES GREEN &
SIMMONS
tblanford@humesmith.com