**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

DAVID R. CAMM,                              )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )      No. 4:14-cv-00123-TWP-DML
                                            )
SEAN CLEMONS, and                           )
ROBERT STITES,                              )
                                            )
            Defendants.                     )

**ENTRY ON MOTIONS IN *LIMINE***

This matter is before the Court on Motions in *Limine* filed by Plaintiff David R. Camm

("Camm") ([Filing No. 378](#), [Filing No. 379](#), [Filing No. 380](#)) and Defendant Sean Clemons

("Clemons") ([Filing No. 388](#)). Camm initiated this action in 2014 against numerous law

enforcement officers, prosecutors, and other individuals and entities, asserting claims for violation

of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 as well as state law claims for

intentional infliction of emotional distress, negligent infliction of emotional distress, negligent

supervision, and *respondeat superior*. Following settlement discussions, stipulations of dismissal,

motions for summary judgment, an appeal to the Seventh Circuit, remand from the Seventh Circuit,

and a motion for judgment on the pleadings, only two claims remain for trial against Defendants

Clemons and Robert Stites ("Stites"). The claims are (1) Camm's Fourth Amendment claim based

on the first probable cause affidavit, and (2) a *Brady* claim based on the suppression of Stites' lack

of qualifications and suppression of the facts surrounding the handling of a DNA profile.

After years of litigation and motions practice, this matter is set for a jury trial to commence

on December 6, 2021. The parties filed their Motions in *Limine*, seeking preliminary rulings from

the Court regarding the admissibility of certain evidence. For the following reasons, Camm's Motions are **denied**, and Clemons' Motion is **granted in part and denied in part**.

### I.   LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

### II.   DISCUSSION

Camm filed three separate Motions in *Limine*, and Clemons filed one combined Motion in *Limine* with multiple requests. The Court will address each Motion in turn.

### A.   Camm's First Motion in *Limine*

In his first Motion in *Limine*, Camm asks the Court to exclude any and all evidence and testimony that was determined to be inadmissible by the Indiana appellate courts in the first two criminal trials against him. He explains that evidence of marital infidelity and speculative evidence that Camm molested his daughter was later determined to be inadmissible in his criminal trial. Camm argues it is settled law that a state court judgment must be given the same *res judicata* effect in federal court that it would be given in the courts of the rendering state. *Jones v. City of Alton, Ill.*, 757 F.2d 878 (7th Cir. 1985). He further asserts that the Seventh Circuit follows the rule that

2

inadmissible evidence cannot be "material" in regard to a *Brady* claim. *Jardine v. Dittmann*, 658 F.3d 772 (7th Cir. 2011). Camm argues that it appears from the witness lists of the Defendants that they intend to offer inadmissible evidence in defense of the "materiality" question, but logic and fairness dictate that such a use should not be permitted given the strong holding in the Seventh Circuit that inadmissible evidence cannot be material at all. Therefore, the Court should exclude any evidence or testimony related to evidence deemed inadmissible by the Indiana Court of Appeals and Indiana Supreme Court.

Clemons responds,

> Plaintiff's motions in limine seemingly cuts the legs out from under his *Brady* claim where the jury is required to consider the entirety of the first criminal trial. If Plaintiff does not present the whole case and assuming Plaintiff's *Brady* claim survives a motion for judgment on the evidence, Clemons should not be precluded from presenting the evidence sought to be excluded so that the jury may properly consider the question of materiality. Accordingly, Plaintiff's motion must be dismissed.

([Filing No. 408 at 1](#).)

Clemons notes that a *Brady* claim requires a defendant concealing impeachment evidence that was not otherwise available to the plaintiff during his criminal trial, the evidence was material, and plaintiff was damaged as a result. Therefore, in this case, Camm must show that had he known Stites' lack of qualifications or that the DNA profile was not in fact run, the result of the first trial would have been different. Camm seeks the exclusion of evidence and testimony regarding his extramarital affairs and the molestation of his daughter Jill. However, in determining whether the first trial would have been different, the jury is entitled to hear all of the other evidence used to support the initial conviction. Without such consideration, the jury cannot render a just and informed verdict.

One of the statements in the first probable cause affidavit (which concerns Camm's Fourth Amendment claim) was about Camm's daughter's molestation, and Clemons must be able to introduce testimony and evidence that supports all statements made in the probable cause affidavit in order to present a proper and complete defense.

Clemons additionally argues that *res judicata* does not apply because the facts about marital infidelity and molestation of Camm's daughter are not at issue in this case. Rather, the issue is whether those facts were material to the jury's verdict in the criminal case, not to prove the existence of those facts.

At this pretrial stage, the Court is not convinced that "any and all evidence and testimony that was determined to be inadmissible by the Indiana appellate courts in the first two criminal trials against Camm" is clearly not admissible for any purpose in this trial. Given the elements of Camm's *Brady* claim and the contents of the first probable cause affidavit, the Court must defer this evidentiary ruling until trial so that questions of relevance and prejudice may be resolved in context. Therefore, the Court **denies** Camm's first Motion in *Limine* ([Filing No. 378](Filing No. 378)).

**B.**     **Camm's Second Motion in *Limine***

Next, Camm asks the Court to exclude evidence and testimony regarding the investigation after the first probable cause affidavit, which was dated October 1, 2000. The Court has limited Camm's Fourth Amendment claim to his detention arising from the first probable cause affidavit and damages cannot extend beyond the date that the jury found him guilty in his first criminal trial—March 17, 2002. Camm notes that many of the witnesses on the Defendants' witness lists are individuals who were involved in the criminal prosecution only after October 1, 2000, the date that Clemons signed the first probable cause affidavit. Thus, Camm argues evidence of subsequent

investigations or discovery of facts unknown to an officer at the time of arrest are irrelevant to the determination of probable cause.

By identifying investigators and other witnesses who were involved in Camm's criminal investigation only after the date of the first probable cause affidavit, Camm argues that the Defendants have shown their intent to introduce evidence that could not have been known to Clemons at the time he signed the first probable cause affidavit. Camm argues this evidence or testimony regarding the subsequent investigation would be irrelevant, and irrelevant evidence is inadmissible.

In response, Clemons reiterates his argument presented against the first Motion in *Limine* concerning "materiality" for the *Brady* claim. He asserts, "In order to show that the result of the first trial would have been different, the jury is entitled to hear all of the other evidence used to support the initial conviction. This necessarily involves matters identified in the subsequent investigation and the investigation itself." (Filing No. 408 at 4.)

As to the Fourth Amendment claim, Clemons points out the Camm must prove statements in the probable cause affidavit were false and Clemons knew that the statements were false. Clemons asserts that he

> does not seek to introduce additional information not referenced in the initial probable cause affidavit. However, Defendant Clemons should have the opportunity to present testimony and evidence of witnesses outside that initial investigation to aid the jury in understanding the veracity of the statements in the initial probable cause affidavit and to provide a complete and proper defense that the statements made in the probable cause affidavit were true.

*Id.* at 5.

The Court concludes that Camm has not shown that evidence and testimony regarding the investigation after the first probable cause affidavit is clearly not admissible for any purpose in this trial in light of what is necessary to support Camm's Fourth Amendment and *Brady* claims.

The Court determines that questions of relevance and prejudice as to this evidence need to be resolved in the context of trial. Therefore, the Court **denies** Camm's second Motion in *Limine* (Filing No. 379).

**C.**    **Camm's Third Motion in *Limine***

In his third Motion in *Limine*, Camm asks the Court to exclude all evidence and testimony related to undisclosed expert witness opinion testimony. He asserts that the case management plan established expert witness disclosure deadlines, and none of the Defendants disclosed any expert witnesses before the deadline passed. From the witness lists of the Defendants, it appear that they intend to call expert witnesses at trial who were not disclosed: Rodney Englert, Robert Stites, Dean Marks, Dr. Donna Hunsaker, Dr. Tracey Corey Handy, Tom Bevel, Robert Spalding, Betty Spivack, Philip Merk, William Chapin, and Bart Epstein.

Rule 26(a)(1) requires, among other things, the disclosure of the names and addresses of fact witnesses, and Rule 26(a)(2) requires that expert witnesses be disclosed. The duty to disclose a witness as an expert is not excused when a witness who will testify as both a fact witness and an expert witness is disclosed only as a fact witness. Under Rule 37(c)(1), exclusion of non-disclosed evidence is automatic and mandatory unless non-disclosure was justified or harmless. Camm argues that he would be prejudiced by permitting the expert opinion testimony from undisclosed expert witnesses who were disclosed only as fact witnesses.

Clemons responds,

As mentioned previously, Defendant Clemons does not seek to re-litigate the criminal case as the guilt of Plaintiff has already been determined. Defendant Clemons is not asking for such witnesses to be recertified as experts. Such matters were adjudicated at the state trial court level in this matter. The validity of the science is not at issue here. Rather, Defendant Clemons seeks to provide the complete record for the jury to consider in adjudging Plaintiff's *Brady* claim. To prove that claim, Plaintiff must show that the result of the first trial would have

been different had they known about Stites' lack of qualification and/or had they known about the CODIS DNA hit.

([Filing No. 408 at 5](#).) Furthermore, Clemons points out, Camm himself has identified Rodney Englert, Robert Stites, and Dr. Tracey Corey Handy as witnesses without disclosing them as experts.

Clemons argues that the purpose of Rule 26's expert disclosure requirement is to avoid prejudice to the opposing party, but such prejudice that Rule 26 seeks to avoid is not at issue here. Camm is not prejudiced by the listing of these witnesses as he has had the opportunity to depose the witnesses or has had access to all former depositions and trial testimony of such individuals prior to trial. The witnesses will be called as fact witnesses to show what testimony was introduced in the original criminal trial. They are not testifying to provide expertise on an issue that is before the jury but rather to provide testimony and evidence that was presented in the first criminal trial. This is necessary in order to show whether the results of the first criminal proceeding would have been different.

Clemons' argument is well-taken. The Court cannot say that these witnesses are being offered as expert witnesses in this trial to offer expert opinion testimony regarding facts or matters that require expert testimony in this trial. At this stage, it appears that the witnesses will be called as fact witnesses, and their disclosure as expert witnesses was not necessary. Therefore, the Court **denies** Camm's third Motion in *Limine* ([Filing No. 380](#)).

### D.    **Clemons' Motion in *Limine***

Clemons brings multiple requests in his Motion in *Limine*. The Court will address each request in turn.

#### 1.    **First Request**

First, Clemons asks the Court to prohibit any testimony, evidence, or comment regarding claims that did not survive on appeal to the Seventh Circuit and any other alleged constitutional violations not currently before the Court and are not currently the subject of this lawsuit, including any alleged investigative failures. He asserts that the only remaining claims for consideration are Camm's Section 1983 claims limited to (1) Camm's Fourth Amendment claim for wrongful arrest and detention, (2) Camm's *Brady* claim regarding DNA testing, and (3) Camm's *Brady* claim regarding Stites' lack of qualifications. Clemons asserts that any testimony or evidence about the claims that have not survived for trial would be unfairly prejudicial, irrelevant, and misleading and confusing for the jury.

Camm responds that he

does not intend to offer evidence of Constitutional violations other than the Fourth Amendment and *Brady* claims being presented to the jury. Clemons motion does not set forth what evidence in particular he is moving to exclude, so Camm is unable to respond as to a particular item of evidence or subject of witness testimony. So far as the motion in *limine* No. 1 does not identify any particular subject, evidence, or testimony, Plaintiff objects to the motion being granted.

([Filing No. 404 at 1](#).)

This request is **granted**. The Court will not allow testimony, evidence, and argument concerning the claims that have been dismissed as such is not relevant and would likely confuse the jury. Camm does not intend to offer evidence of Constitutional violations other than the Fourth Amendment and *Brady* claims being presented to the jury, however, if he believes particular evidence is relevant and admissible as to his remaining claims, this ruling does not prevent him from offering such evidence during trial.

### 2.   **Second Request**

Pursuant to Federal Rules of Evidence 403, 404, and 608, Clemons asks the Court to prohibit any testimony, evidence, or comment regarding extrinsic evidence on a collateral matter for the purpose of impeaching credibility.

> Specifically, Plaintiff should be barred from introducing testimony, evidence, or comment by John Singleton regarding Stanley Faith's credibility as to palm print evidence. Prior testimony indicates that Stanley Faith never told Singleton what to say in terms of testimony but a mere reaction by Faith made him feel that Faith was unhappy with his testimony. Without more, this is purely speculation on the part of the witness.

(Filing No. 388 at 2.) Clemons further argues, "Plaintiff should also be barred from introducing testimony, evidence, or comment by Damon Lettich regarding Stanley Faith's credibility as to carpet fiber evidence." *Id.* "Of note, Stanley Faith is no longer a party in this matter. Reference to such matters is collateral to the issues to be decided by the trier of fact." *Id.* at 3.

> Clemons additionally asserts,

> Plaintiff should also be barred from introducing any testimony, evidence, or comment by Lynn Scamahorn regarding Stanley Faith's credibility as to DNA evidence found on the gray sweatshirt at issue here as it is separate from the DNA profile at issue. Although more closely connected than the testimony of John Singleton and Damon Lettich, such testimony, evidence, or comment still regards collateral matter for the purpose of impeaching credibility, and, thus, should not be able to be introduced using extrinsic evidence. Moreover, Plaintiff should be barred from introducing any testimony, evidence, or comment regarding any disciplinary complaints made by Lynn Scamahorn as a result of such collateral matter or the results thereof.

*Id.*

Clemons argues this evidence would be irrelevant, confuse the jury, and be unfairly prejudicial. He contends that, "[s]hould the Court allow such matters to be inquired into, any such testimony or comment should be limited to a statement of opinion in accordance with Federal Rule of Evidence 608." *Id.* at 4.

Camm does not object to this request as to Damon Lettich and John Singleton, but he objects to the exclusion of testimony from Lynn Scamahorn. Camm contends that Lynn Scamahorn's testimony directly relates to Stanley Faith's ("Faith") character for untruthfulness. "Faith, in his deposition, in his trial testimony, and in several news interviews, stated different versions of the events surrounding the failure to run the unknown male DNA profile on Boney's sweatshirt through the CODIS system." (Filing No. 404 at 1–2.) Camm argues that Lynn Scamahorn should be permitted to testify about the pressure which Faith put on her to provide false information as it reflects on Faith's character for untruthfulness.

The Court **grants** this request as to Damon Lettich and John Singleton because such evidence is irrelevant. However, the Court cannot determine at this pretrial stage that testimony from Lynn Scamahorn is clearly not admissible for any purpose and, therefore, **denies** this request as to Lynn Scamahorn. The Court notes that the Seventh Circuit, when reviewing Camm's claims, limited the DNA testing claim to the fact that it had not been run. Therefore, Lynn Scamahorn may not testify as to DNA evidence found on the gray sweatshirt as such is beyond the scope of the claim.

### 3.   __Third Request__

Next, "Defendant Clemons requests the Court prohibit any testimony, evidence, or comment regarding any witness' opinion as to the overall investigation by David Camm." (Filing No. 388 at 4.) Clemons argues that Camm should not be permitted to testify about his opinion as to how the investigation progressed or should have progressed. He contends that it is well established "police officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established via the accusation of a credible witness." *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006). Clemons asserts that even

a biased investigation does not mean evidence was suppressed or there was a failure to disclose, and it does not mean that false or reckless statements were included in the probable cause affidavit. Thus, Clemons argues, this evidence would be irrelevant and unfairly prejudicial.

Camm responds,

> Plaintiff has no objection [to] motion in *limine* No. 3. Camm reincorporates and restates his Motion in *limine* to exclude evidence or testimony regarding investigation subsequent to the October 1st, 2000, probable cause affidavit. The Plaintiff's position is that not only should witnesses not be testifying as to their opinion as to the overall investigation, but further that the <u>overall</u> investigation is not relevant to either the 4th Amendment or Brady claims remaining.

(Filing No. 404 at 2 (emphasis in original).)

The Court **grants** this request to prohibit testimony of the *opinion* of witnesses about how the investigation was conducted or should have been conducted as such opinion testimony is not relevant.

### 4.    **Fourth Request**

Clemons asks the Court to prohibit testimony and evidence of "any lay witness' theories, excluding qualifying expert testimony, as to what happened during the course of the murders on September 28, 2000, unless in accordance with Federal Rule of Evidence 602 or Federal Rule of Evidence 702 and 703." (Filing No. 388 at 5.) He argues this would be irrelevant and unfairly prejudicial in regard to the remaining claims.

In response, Camm asserts,

> Neither Plaintiff nor Defendant has identified or disclosed any expert witnesses on the subject of opining as to what happened during the course of the murders on September 28, 2000. So, to that extent, Plaintiff does not object to Clemons' Motion *in limine* No. 4. Plaintiff does, however, intend to introduce evidence through the Plaintiff, his alibi witnesses, and state investigators about what the evidence was that was communicated to Clemons describing the events of September 28, 2000, and what conclusions a reasonable officer could draw from that evidence, specifically limited to the items of information contained or recklessly omitted from the October 1, 2000, affidavit sworn to by Sean Clemons.

To the extent Clemons' motion *in limine* would preclude the introduction of that evidence, the Plaintiff objects to that motion.

(Filing No. 404 at 2.)

The Court **grants** this request to exclude any opinion testimony regarding witnesses' theories as to what happened during the course of the murders on September 28, 2000. However, the Court will allow fact evidence and testimony that has been identified in Camm's response.

### 5.    **Fifth Request**

Next, Clemons asks the Court to prohibit testimony and evidence of any witnesses' opinion about Stites' or Rodney Englert's investigation and subsequent findings unless a foundation is first established for offering an opinion. Clemons makes this request pursuant to Rules 702 and 703 to limit any expert testimony to those who are qualified to render expert testimony. Clemons argues that Camm

> should be barred from eliciting testimony, evidence, or comment from Indiana State Police witnesses, other than Dean Marks, Rodney Englert, and William Chapin, if the proper foundation is laid, regarding Robert Stites' and Rodney Englert's investigation as they do not qualify as expert witnesses under Federal Rule of Evidence 702 in the area of blood spatter analysis. In addition, the validity of blood spatter evidence is not at issue.

(Filing No. 388 at 6.)

> In response,
>
> Plaintiff objects to Clemons' Motion *in limine* No. 5. Neither Robert Stites nor Rodney Englert were identified by Defendant Clemons as experts pursuant to Fed. R. Civ. Proc. 26(a)(2) in this matter. Therefore, it would be inappropriate for the Court to permit their testimony on any matter which is a subject of expert opinion testimony. To the extent this Response overlaps with Camm's motion to exclude undisclosed expert testimony [DN 380], Camm fully incorporates the arguments and authority of his prior motion herein.

(Filing No. 404 at 3.)

The Court directs the parties to its decision above concerning Camm's third Motion in *Limine*, where the Court held that witnesses will be permitted to testify as fact witnesses rather than providing expert opinion testimony. The Court **grants** this request. To the extent either party seeks to present expert testimony from a witness who has not been properly disclosed as an expert witness, that expert opinion testimony will not be permitted.

6.     <u>**Sixth Request**</u>

Clemons asks that Camm be prohibited from offering medical opinion testimony and hearsay medical testimony from individuals not qualified to provide such testimony or from individuals who may be qualified but were not otherwise properly designated. Clemons argues that Camm will seek to introduce testimony about his mental health or emotional distress from himself and family members regarding emotional distress and pain and suffering he allegedly experienced. Clemons argues that, as lay witnesses, they lack the knowledge, skill, experience, training, and education that would qualify them to testify about the nature of any underlying medical condition or mental health condition, cause, or its permanence as a result of the incident. Thus, they should be excluded from providing such testimony.

Camm responds that it is well settled that plaintiffs and their lay witnesses may testify about their own perceptions of an individual's physical and mental health before and after an incident, without it being considered expert testimony. *See Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009). Likewise, other witnesses may testify about their observations regarding Camm's condition before and after his arrest.

Camm's position is well taken. The motion *in limine* is **denied**. Camm, his family members, and others may testify about their personal observations of Camm before and after the incidents

giving rise to his claims. However, family members and others may not provide expert medical opinion testimony without first being properly disclosed and qualified.

### 7.    <u>Seventh Request</u>

Next, Clemons asks the Court to prohibit Camm from offering medical opinion testimony and hearsay medical testimony, including testimony regarding mental and emotional health. Clemons asserts that Camm will seek to elicit testimony from Erin Coram as a treating witness. However, Clemons argues, Camm failed to provide sufficient disclosure under Federal Rule of Evidence 26. Clemons explains that on November 8, 2016, Camm filed a notice of service regarding two sets of expert disclosures, the second of which listed Erin Coram as a treating witness, and noted that the witnesses will provide opinions regarding Camm's treatment. The designation generally stated that such opinions are based upon Camm's history, examination, studies and other tests, and consultation with other treating professionals. But this is not sufficient for an expert disclosure, Clemons argues. Therefore, the Court should limit Erin Coram's testimony to that of a fact witness and exclude any testimony of her as an expert witness.

Camm responds that his notice of service regarding the testimony of Erin Coram was sent November 8, 2016, and at no point while discovery was still open did Clemons' counsel follow up with Camm's counsel regarding any alleged shortcoming or request for more information for Erin Coram's expert disclosure. Furthermore, with no objection from Camm, Clemons sought leave to depose Erin Coram regarding her testimony after the discovery deadlines had closed, which was granted. The deposition was set for October 28, 2021, but the deposition was inexplicably cancelled the night before it was going to take place. Therefore, Camm contends, any arguable surprise or lack of information about which Clemons complains is due to his own failure to seek

discovery while discovery was open, and his failure to take advantage of the relief the Court already has granted to take Erin Coram's deposition in advance of the upcoming trial.

At this pretrial stage and on the limited in *limine* record, the Court cannot conclude that this testimony is clearly not admissible for any purpose in this trial. The Court must defer this evidentiary ruling until trial so that questions of disclosure, qualification, relevance, and prejudice may be resolved in context. Therefore, the Court **denies** this request.

### 8.   **Eighth Request**

Clemons asks the Court to prohibit Camm from introducing any testimony or comment by any witness that is not qualified to offer expert testimony regarding the economic value of Camm's alleged injuries. Camm is seeking lost wages associated both with his incarceration and with the ramifications of having been tried on the charges of murder. However, evidence or testimony that he was unable to obtain employment will include evidence that is inadmissible speculation concerning causation, the market for employment opportunities for Camm's skill set during the time at issue, and the probable wage for someone with his skill set. Camm and his family members are not qualified to provide opinion testimony concerning such damages.

Camm responds that he does not intend to offer any expert testimony as to his economic damages, so he does not object to this request as it relates to expert testimony. However, he asserts, lay witnesses are permitted to testify as to their observations of Camm's mental anguish and emotional distress injuries. Additionally, Camm was deposed and can testify as to what employment wages he was earning at the time of his arrest and expected to earn during the time when he was incarcerated and unable to earn those wages. Camm further argues that the Seventh Circuit pattern jury instruction on compensatory damages for constitutional tort claims indicates

that a plaintiff need not offer any expert testimony to establish his mental and emotional pain and suffering damages.

This request is **granted** to prohibit any witness who is not qualified to offer expert testimony regarding the economic value of Camm's alleged injuries from providing such expert testimony. However, Camm and other witnesses may provide fact testimony and evidence concerning their personal observations and knowledge.

9.    **Ninth Request**

Clemons next asks the Court to prohibit any testimony regarding other crimes committed by Charles Boney other than the conviction for the murders or sentences received by Charles Boney unless in accordance with Federal Rules of Evidence 404, 608, and 609. Clemons notes that it is a fundamental principle of law that counsel may not introduce extrinsic evidence, except for a criminal conviction under Rule 609, on a collateral matter for the purpose of impeaching credibility. Clemons has stipulated that on March 7, 2005, Charles Boney was charged with felonies related to Camm's case, and he subsequently was convicted on all counts on January 26, 2006. Furthermore, Clemons also has stipulated that the DNA profile of Charles Boney has been in the CODIS database since 1997.

Camm objects to this request because Clemons mischaracterized Charles Boney's criminal history as extrinsic evidence. Camm asserts that part and parcel of Camm's Fourth Amendment claim in proving that Clemons was reckless in omitting information from the probable cause affidavit was the extreme rush of the affidavit signed a mere three days after the murders by Charles Boney occurred. Camm further contends the *Brady* claim centers around the fact that Clemons failed to disclose the fact that the DNA profile matching Charles Boney was found on the prison issue sweatshirt at the crime scene.

At this pretrial stage and on the limited in *limine* record, the Court cannot conclude that this testimony and evidence is clearly not admissible for any purpose in this trial. The Court must defer this evidentiary ruling until trial so that questions of relevance, prejudice, and admissibility may be resolved in context. Therefore, the Court **denies** this request.

10. <u>**Tenth Request**</u>

Clemons asks the Court to prohibit any testimony or comment that the State of Indiana will indemnify any of the remaining Defendants. Whether the State provides indemnity is irrelevant to the issue of whether any Defendant is liable for any acts they may have performed which proximately caused injury to Camm. Such indemnity evidence is highly prejudicial. Reference to indemnity is akin to reference to insurance, which is precluded by Federal Rule of Evidence 411.

Clemons additionally asks the Court to prohibit Camm from making any reference to Clemons' attorneys as "State lawyers," "the State," or similar terms. Any reference to Clemons' affiliation with the State is improper and will serve no purpose other than to improperly suggest to the jury that the State of Indiana will pay any judgment in this case.

Camm responds that he

has no objection to Clemons' Motion *in limine* NO. 10, and counsel expects their normal practice of referring to Defendant's counsel as such or by surname (i.e., Mr. Voight, Ms. DeNardi, etc.), but points the court's attention to Clemons' proposed *voir dire* questions which reveals that they are with the attorney general's office. The motion and the proposed *voir dire* question appear to be in conflict.

(Filing No. 404 at 6.)

This request is **granted in part**, and the parties are prohibited from commenting on or presenting evidence of possible indemnity by the State of Indiana for the Defendants. Furthermore, the parties are to refer to individuals as Mr. or Ms., defense counsel, plaintiff's counsel, or opposing counsel rather than by first name or other title designations.  That counsel for the Defendants are

employees of the attorney general's office is relevant and the Court will make the appropriate inquiry during *voir dire* and jury selection.

### 11.   Eleventh Request

Clemons requests the Court prohibit any testimony, evidence, or comment regarding a "Code of Silence." Plaintiff should not be allowed to improperly argue that the alleged conduct of Defendant Clemons in this case should be punished as a way of setting an example to other police personnel or the police department in general and not be allowed to improperly argue that misconduct of non-defendants should be part of any liability or damages imputed on Defendant Clemons. Introduction of such evidence would be irrelevant as it is not the subject of the surviving claims and would be unduly prejudicial to the Defendant Clemons.

(Filing No. 388 at 11.)

Camm responds that he "has no intention of eliciting testimony or arguing about a 'code of silence.'" (Filing No. 404 at 6.) With no objection to this request, the Court finds that such testimony would be unfairly prejudicial and is irrelevant. The Court **grants** this request.

### 12.   Twelfth Request

Clemons asks the Court to prohibit Camm from asking the jury to put themselves in Camm's situation and fix their verdict on the amount they would want under the same circumstances. *See Klotz v. Sears, Roebuck & Co.*, 267 F.2d 53 (7th Cir. 1959). In response, Camm notes he "has no intention of making any 'golden rule' arguments." (Filing No. 404 at 6.) As the Seventh Circuit has explained, it "is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989)). This argument is well taken, and the request is **granted**.

### 13. <u>**Thirteenth Request**</u>

Next, Clemons argues that Camm should be barred from arguing that the Floyd County Prosecutor's Office, the Indiana State Police or any other law enforcement agency, Robert Stites, and Rodney Englert conspired together to frame Camm of a crime. Clemons notes that there is no remaining conspiracy claim at issue, and the introduction of such evidence would be irrelevant and unduly prejudicial. Camm explains that he "has no intention of presenting evidence or arguing an alleged conspiracy claim. Plaintiff intends to present evidence and arguments related to the Fourth Amendment and *Brady* claims being presented to the jury." (Filing No. 404 at 6.) Clemons' request is well taken as argument of a conspiracy is irrelevant as to the remaining claims and would be unfairly prejudicial to Clemons. Therefore, this request is **granted**.

### 14. <u>**Fourteenth Request**</u>

Clemons asks the Court to prohibit any testimony or evidence about polygraph examinations. Clemons asserts that Camm and other witnesses should be barred from testifying that Camm offered to submit to a polygraph examination, and they should be barred from testifying about Charles Boney's polygraph examination and the results of that test. Polygraphs are not generally accepted as scientific evidence and have been viewed as unreliable. Reference to the results of polygraph examinations also invade the province of the jury as jurors have long been considered competent to gauge the credibility of live witnesses. Such tests and results are prejudicial, misleading, and a waste of time.

Camm responds that he has no objection to the inadmissibility of polygraph examinations of either Camm or Charles Boney. However, Camm objects to the extent that he anticipates that his credibility will be attacked by the Defendants at trial, and evidence or arguments may be made that Camm's behavior in the three days following the murders were somehow indicative of his

involvement in the murders. If such evidence is put before the jury, then Camm should be permitted to flesh out the evidence presented to the jury, including his willingness to submit to a polygraph examination.

The Court concludes that evidence of Charles Boney's polygraph examination and the results of that test are not relevant to the claims to be tried and would be confusing and a waste of time. Therefore, the Court **grants** this request as to Charles Boney. However, at this pretrial stage, the Court cannot conclude that this testimony and evidence as to Camm is clearly not admissible for any purpose in this trial. The Court must defer this evidentiary ruling until trial so that questions of relevance, prejudice, and admissibility may be resolved in context. Therefore, the Court **denies** this request as to Camm.

### 15. <u>Fifteenth Request</u>

Next,

> Defendant Clemons requests the Court prohibit the Plaintiff from characterizing the ultimate outcome of his criminal trials as "innocent," but rather as "not guilty." "Not guilty" is not the same as "innocent." "Innocent" means that a person did not commit the crime. "Not guilty" means that the prosecution could not prove "beyond a reasonable doubt" that a person committed the crime. The jury's verdict under Spencer County, Indiana, Cause No. 74C01-1210-MR-000184 was "not guilty." This motion is based on Federal Rule of Evidence 403, as the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury.

(Filing No. 388 at 13–14.)

Camm responds,

> Plaintiff objects to Clemons' motion *in limine* No. 15. While Camm does not intend to characterize the outcome of his criminal trials as anything other than that he was acquitted or not guilty, the long-established principal in this country is that "[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 1692, 48 L. Ed. 2d 126 (1976). In order to decide the *Brady* claim issues of whether the exculpatory evidence

withheld was material, the jury must understand that in making its decision, Camm was presumed innocent until proved otherwise beyond a reasonable doubt.

(Filing No. 404 at 7.)

This request is **granted in part and denied in part**. It is granted in that Camm may not characterize the outcome of his criminal trial as being found innocent, rather he was found not guilty.  But Camm's position and argument regarding the presumption of innocence is well taken, and he may offer evidence concerning the presumption of innocence related to his *Brady* claim.

### 16.   **Sixteenth Request**

Lastly,

> Defendant Clemons requests the Court prohibit Plaintiff from offering testimony from witnesses to establish an alibi for the time of the murders on September 28, 2000. Specifically, Defendant Clemons seeks to bar the testimony of Martin Dickey, Jeff Dickey, Jeremy Little, Scott Schrank, Mark Wernecke, Tony Ferguson, Jr., Eric Minzenberger, and Tom Jolly. Each of these witnesses are anticipated to testify about the Plaintiff's whereabouts on the evening of September 28, 2000. As referenced in Motion in Limine No. 1, the matter before the jury is not whether the Plaintiff committed the murders on September 28, 2000; therefore, the testimony setting forth an alibi is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury under Federal Rule of Evidence 401 and Federal Rule of Evidence 403.

(Filing No. 388 at 14.)

In response, Camm argues,

> The Seventh Circuit and this Court have repeatedly stated that Camm's Fourth Amendment claim includes the issue of whether there were reckless omissions from the probable cause affidavit attested to be Clemons. Clemons, in his deposition, testified that David Camm had provided his alibi prior to his arrest and that all 11 alibi witnesses had been interviewed prior to his arrest. Deposition of Sean Clemons, pg. 34. Therefore, while Camm agrees that it is highly prejudicial to Clemons that recklessly failed to include that information in the probable cause affidavit, it is also highly relevant to the very issue the jury will be deciding. Namely, whether Clemons recklessly omitted information from the probable cause affidavit which would have been material to the judicial officer's determination of whether there was probable cause for Mr. Camm's arrest.

(Filing No. 404 at 7–8.)

Clemons has not shown that this testimony and evidence is clearly not admissible for any purpose in this trial. Therefore, the Court **denies** this request.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Camm's Motions in *Limine* (Filing No. 378, Filing No. 379, Filing No. 380) and **GRANTS in part and DENIES in part** Clemons' Motion in *Limine* (Filing No. 388). An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED.**


Date:   11/9/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Betsy M. DeNardi
INDIANA ATTORNEY GENERAL
Betsy.DeNardi@atg.in.gov

Christi M. Foust
INDIANA ATTORNEY GENERAL
christi.foust@atg.in.gov

Cory Christian Voight
INDIANA ATTORNEY GENERAL
cory.voight@atg.in.gov

Terry Wayne Tolliver
BRATTAIN MINNIX GARCIA
Terry@BMGIndy.com

Garry R. Adams
ADAMS LANDENWICH WALTON, PLLC
garry@justiceky.com

Daniel J. Canon
CLAY DANIEL WALTON & ADAMS
dan@dancanonlaw.com

Andrew Thomas Lay
ADAMS LANDENWICH WALTON
pete@justiceky.com